THE INHABITANTS OF FITCHBURG *vs.* THE INHABITANTS OF WINCHENDON.

Whether a person removing from one town to another intends to change his residence, is a question of fact, and not of law.

In an action brought by one town against another for the support of a pauper and his family, evidence that the pauper left his former home and came to the defendant town with the intention of removing his family there as soon as practicable, that he boarded and worked there for ten years, and paid taxes there five years of the ten, and that a year after he came, his family removed there, and continued to reside with him for the rest of the ten years, when they all removed to the plaintiff town, is sufficient to warrant the jury in finding that the pauper had gained a settlement for himself and family in the defendant town.

THIS action, which was tried before *Hopkinson,* J., in the court of common plea* was brought to recover the sum of $42·68, for the support of Lemuel Sanders and his family, as paupers, having their legal settlement in the town of Winchendon. The defendants admitted, that all the preliminary steps requisite to charge them with the support of the paupers had been taken by the plaintiffs, and that they were liable accordingly, provided the paupers had their legal settlement in Winchendon, which was the only question in the case.

The plaintiffs contended, that the paupers had acquired a legal settlement in Winchendon, in the twelfth mode pointed out in the Rev. Sts. *c.* 45, § 1, by a residence of ten years, and the assessment and payment of taxes five years during that period, in the town of Winchendon ; and the defendants admitted, that Sanders was assessed and paid a poll tax in Winchendon, as of the 1st of May, 1832, and in each year thereafter, until the year 1840.

To prove the ten years' residence of Sanders in Winchendon, he was called as a witness by the plaintiffs, and testified in substance as follows : That he was born in Rutland, in the county of Worcester, was forty-nine years of age, and was married in 1819 ; that in 1830, he lived in Oakham, with his wife, and then had four children ; that he then worked in the Barre factory, until about the last of June, 1831, when he went to Winchendon to work for J. D. Dunbar, building and

setting up machinery; that he lived there until the 26th of October, 1842, and then removed to Fitchburg, where he had ever since resided; that it was his intention to remove to Winchendon, though he did not know that any thing was said to Dunbar about his removal, and nothing was said about the remaining or removal of his family; that while employed in the Barre factory, he was at work for Dunbar, who wanted him to go to Winchendon ; that he then thought, if he liked and Dunbar liked, he should remove there; that in March or April, 1832, while at Winchendon, soon after Dunbar removed there (who had not lived there before) the witness received a letter from one Babbitt, requesting him to come back and work for one Clark in Barre factory; that he then had some conversation with Dunbar about removing to Winchendon, and told him that they wanted him (the witness) back to the Barre factory; that he told Dunbar if he was going to work there (in Winchendon) any longer, he wanted to be getting his family up ; that Dunbar thought he had better stay, and that if he had a mind to stay, and would stay and do as well as he had done, he should have the first chance there was for a tenement, of which there were none then to be had, but they were going to build some ; that he thereupon determined to stay in Winchendon, and sent word to Babbitt to that effect, and did stay ; that at the time of this conversation, he had been and was boarding and continued to board at the factory boarding-house in Winchendon, where he had his washing and most of his mending done, some of the bad mending being done at Oakham, where his family continued to reside ; that his wife and children came to Winchendon to reside on the 6th of November, 1832, being carried there and their goods removed by one Nickerson, who was employed for that purpose by William Dunbar, an uncle of J. D. Dunbar; that the reason why they did not come to Winchendon sooner was because there was no tenement then ready for the witness to remove into; that the last time he went to his family at Oakham was about a month before their removal ; that being sent by Dunbar for some castings at South Brookfield, he went home in his way

there and staid over night; that he used to go in this way of errands for Dunbar to South Brookfield, and on his way visit his family ; that if he had no errands that way he hired a horse and carriage and went home to see his family (the distance being about twenty-three miles), which happened as often, perhaps, as once in three or four weeks ; that after his conversation with Dunbar, he never expected to go back to live in Oakham, but that if Dunbar did not keep him, he should go somewhere else, to Stafford rather than to Barre, though he had no thoughts of leaving ; that he was assessed in Winchendon, and paid a tax there in 1832; that during this time he did not think any thing about where his home was, though, in answer to any proper question, he should probably have spoken of Oakham as his home ; that he was then at work in Winchendon, liable to be turned away at any time, and having no lease of a house at Oakham, he was liable to be turned out by his landlord at any time ; that the assessors of Winchendon did not, to his knowledge, come to see him, except once in 1840, or 1841 ; that during the whole time while he worked in Winchendon, before his family came there, he worked by the day, and did not make or ask Dunbar to make any contract; that before Dunbar removed to Winchendon, he carried on the factory at Barre, and the witness went back and worked there for him about two weeks, during which time he spent the nights with his family ; that once when he was sick, he thought in 1831, he went home and staid a week ; that in 1831 or 1832, he could not tell which, but he supposed in 1832, he was taxed in Oakham ; that he refused to pay the tax, when called upon by the collector, giving as a reason, that he had already paid a tax in Winchendon ; and, that he was never again called upon, and had never paid the tax assessed upon him in Oakham.

The plaintiffs here rested the case, and the presiding judge being of opinion that the evidence was not sufficient to authorize the jury to find a verdict for the plaintiffs, a verdict was thereupon rendered for the defendants, and the plaintiffs alleged exceptions.

*N. Wood,* for the plaintiffs, referred to *Lyman* v. *Fiske,* 1 ʼ

Pick. 231; *Opinion of the Justices,* 5 Met. 587; *Bruce* v. *Bruce,* 2 B. & P. 229, note; *Harvard College* v. *Gore,* 5 Pick. 370; *Guier* v. *O'Daniel,* 1 Binn. 349, note; *Westbrook* v. *Bowdoin-ham,* 7 Greenl. 363; *Richmond* v. *Vassalboro',* 5 Greenl. 396; *Hallowell* v. *Saco,* 5 Greenl. 143; *Raymond* v. *Harrison,* 2 Fairf. 190; *Greene* v. *Windham,* 1 Shep. 225; *Cambridge* v. *Charlestown,* 13 Mass. 501; *Athol* v. *New Salem,* 7 Pick. 42.

*B. F. Thomas,* for the defendants, referred to *Kilburn* v. *Bennett,* 3 Met. 199; *De Bonneval* v. *De Bonneval,* 1 Curt. Ec. 856; *Munroe* v. *Douglas,* 5 Mad. 379; Story, Confl. § 46; *Opinion of the Justices,* 7 Greenl. 497, 501; *Williams* v. *Whiting,* 11 Mass. 424; *Jennison* v. *Hapgood,* 10 Pick. 77; *Waterborough* v. *Newfield,* 8 Greenl. 203; *Greene* v. *Windham,* 1 Shep. 225; *Shattuck* v. *Maynard,* 3 N H. 123; *Rumney* v. *Campton,* 10 N. H. 567.

FLETCHER, J. This is an action of assumpsit to recover for supplies furnished by the town of Fitchburg for the support of Lemuel Sanders and his family, as paupers, having their legal settlement in the town of Winchendon.

The plaintiffs alleged that Sanders and his family had acquired a settlement in Winchendon under the twelfth mode specified in the Rev. Sts. *c.* 45, § 1, by a residence of ten years in succession and the payment of taxes for five years during that time in Winchendon.

After the evidence for the plaintiffs was put in, the judge ruled that it would not warrant the jury in finding a verdict for the plaintiffs. Whereupon a verdict was taken for the defendants. To this ruling the plaintiffs except. If, therefore, there was evidence which would have warranted the jury in finding a verdict for the plaintiffs, the ruling of the court below was erroneous, and a new trial must be granted.

The question of settlement is one, which, for the most part, must be determined by the facts and circumstances of each particular case; though there are some general principles of law applicable to the subject, which may be applied by the court to the facts of particular cases as found by the jury. In the present case, the question, whether or not the

paupers had a settlement in Winchendon, depended upon the fact of Lemuel Sanders's actual residence in that town, and the intention with which he resided there, the situation of his family, his employment and other circumstances, which were peculiarly within the province of the jury.

There was evidence that he was at work in Winchendon from June, 1831, to October, 1842, being a period of more than ten years; that he was assessed and paid taxes five years of those ten; and, further, that he had left his former home not intending to return to it again. These are the leading and material facts, which may or may not make out a settlement in Winchendon, according to the intention of the pauper, and the particular circumstances in which he was placed. There was also evidence tending to show that Lemuel Sanders went to Winchendon with the intention of fixing his residence and having his settlement there, and to remove his family there as soon as practicable. The intention, which formed a most essential element in the case, was a matter to be inquired of and settled exclusively by the jury. What was the intention of the pauper was a most material fact, and not a question of law, and could only be settled by the jury, and not by the court.

The other facts in the case were such as would well warrant the jury in finding that the pauper was settled in Winchendon, if satisfied that he went to that town and resided there with the intention of making that his home and place of residence for an indefinite period, and without any intention to return to his former place of residence, or to make any other place his home.

The case, therefore, being one which was peculiarly and eminently for the jury, the ruling of the judge was erroneous, and the verdict must be set aside and a new trial granted.